STEPHEN CHA-KIM* (NY - 4979357)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Email: stephen.cha-kim@arnoldporter.com

CARSON ANDERSON (CA - 317308)
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
Telephone: 650.319.4500
Email: carson.anderson@arnoldporter.com

NATALIE STEIERT* (DC - 90010655)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: 202.942.5000
Email: natalie.steiert@arnoldporter.com

OREN NIMNI* (MA - 691821)
AMARIS MONTES* (MD - 2112150205)
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C. 20001-0506
Telephone: (202) 455-4399
Email: oren@rightsbehindbars.org
        amaris@rightsbehindbars.org

SUSAN M. BEATY (CA - 324048)
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California 94612-4700
Telephone: (510) 679-3674
Email: susan@ccijustice.org

MARK RAFTREY (CA - 352610)
BROOKE D'AMORE BRADLEY (CA - 353030)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415-471-3361
Email: mark.raftrey@arnoldporter.com
brooke.damorebradley@arnoldporter.com

*Pro hac vice pending

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| A.L.R.,<br><br>      Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA; UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; RAY J. GARCIA; and JOHN BELLHOUSE,<br><br>      Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................1

JURISDICTION AND VENUE.........................................................................................2

THE PARTIES .....................................................................................................................3

CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS ..........5

JURY DEMAND .................................................................................................................5

FACTUAL ALLEGATIONS..............................................................................................5

I.       Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond
         to Reports of Staff Sexual Misconduct .................................................................5

II.      FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish. ................7

III.     Defendant BELLHOUSE Subjected Plaintiff To Sexual Abuse .........................10

IV.      After Defendant BELLHOUSE Was Investigated for Sexual Abuse, Plaintiff Was
         Retaliated Against by Officer RAMOS ...............................................................11

CLAIMS FOR RELIEF ...................................................................................................13

PRAYER FOR RELIEF...................................................................................................28

COMPLAINT

Plaintiff A.L.R. ("Plaintiff"), by and through her attorneys allege against the Defendants as above captioned as follows upon information and belief:

## INTRODUCTION

1.      For years, people incarcerated at the Federal Correctional Institute, Dublin ("FCI Dublin"), a federal female low-security prison with an adjacent satellite camp, have been subjected to rampant, horrific, and ongoing sexual abuse that continues to this day, including but not limited to: rape and sexual assault; manipulation and sexual coercion, including officers entering into relationships with incarcerated individuals and officers forcing incarcerated individuals to undress in order to be released from cells or for exchange of goods; degrading sexual comments; voyeurism; taking and sharing explicit photos; drugging, groping, and other forms of abuse during medical exams; and targeted abuse towards immigrants under threat of deportation.  The Federal Bureau of Prisons ("BOP") and employees at every level have been aware of these problems for decades and have failed, and continue to fail to take action to protect those in its care by preventing and addressing rampant staff sexual misconduct.

2.      The staff sexual abuse at FCI Dublin became the center of a sprawling criminal investigation, multiple Congressional inquiries, and national media attention.  The United States Senate's Permanent Subcommittee on Investigations devoted multiple hearings to addressing its causes and impact, and issued a report in December 2022 describing the abuse as "horrific" and Defendant BOP's investigative practices as "seriously flawed," and concluding that "BOP management failures enabled continued sexual abuse of female prisoners by BOP's own employees."[1]

3.      Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to incarcerated people.  Under PREA, the U.S. Department of Justice promulgated

---

[1] S. PERMANENT SUBCOMM. ON INVESTIGATIONS, REP. ON SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS, 1 (Dec. 13, 2022), https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf (hereinafter "Senate Report").

COMPLAINT

1  detailed mandatory regulations that provide precise procedures that prisons must follow.  The

2  Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

3      4.      Despite these mandatory protections, while incarcerated at FCI Dublin from 2020

4  to 2021, Plaintiff was repeatedly sexually abused by Defendant BELLHOUSE.  Beginning in early

5  2020 and escalating over time, Defendant BELLHOUSE used his position as a prison officer to

6  have a sexual relationship with Plaintiff. In doing so, Defendant BELLHOUSE violated Plaintiff's

7  Constitutional rights and California law on gender violence, sexual assault, and common law on

8  battery.

9      5.      As a result of Defendants' actions, Plaintiff suffered numerous emotional injuries

10  and incurred sever personal injuries, which continue to affect her today.

11      6.      Plaintiff brings this suit under the United States Constitution Eighth Amendment's

12  prohibition on cruel and unusual punishment.  Plaintiff also brings this suit under the Federal Tort

13  Claims Act ("FTCA") 28 U.S.C. §§ 2671, *et seq.*, under state law on gender violence and sexual

14  assault, and in connection with the deficient supervision and custodial care provided by various

15  BOP personnel, including Defendant BELLHOUSE, within the scope of their employment within

16  the BOP.  Plaintiff also brings this suit under the Trafficking Victims Protection Act ("TVPA") 22

17  U.S.C. §§ 7101, *et seq.*

18                              **JURISDICTION AND VENUE**

19      7.      This Court has original subject matter jurisdiction in this action involving claims

20  arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1346(b).

21  Plaintiffs' claims are predicated, in part, upon the FTCA, 28 U.S.C. §§ 2671, *et seq.*, authorizing

22  actions seeking relief against the United States.

23      8.      The Court has personal jurisdiction of the Defendants because the alleged incidents

24  occurred within the confines of the State of California.

25      9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1402(b) as

26  a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the

27  boundaries of this District, in the County of Alameda.

28

2

COMPLAINT

# THE PARTIES

10.     At all times relevant hereto, Plaintiff was incarcerated in the custody of BOP, incarcerated at FCI Dublin located at 5701 8th St., Dublin, CA 94568.  Plaintiff was released to her community in Turlock, CA, in September 2021.

11.     Defendant United States of America (hereinafter "United States") is the appropriate defendant for Plaintiffs' claims under the Federal Tort Claims Act.  The United States is a sovereign entity that has waived its immunity for certain claims, including the claims set forth herein, and is liable for the acts or omissions of its agents, servants, contractors, and employees that occur within the scope of their employment.

12.     At all times relevant hereto, Defendant United States, acting through the BOP, was responsible for the operation, control, supervision, policy, practice, implementation, and conduct of all BOP matters including at FCI Dublin and was responsible for the hiring, retention, training, supervision, management, discipline, and conduct of all BOP personnel, including but not limited to Defendants GARCIA and BELLHOUSE.

13.     In addition, at all relevant times, United States was responsible for enforcing the rules of the BOP, and for ensuring that BOP personnel obey the Constitution and laws of the United States.

14.     At all times relevant hereto, Defendant United States, acting through the BOP, hired Defendants GARCIA and BELLHOUSE to serve as "correctional officers" and "law enforcement officers" within the meaning and powers of 28 U.S.C. § 2680(h).

15.     Defendant RAY J. GARCIA ("Defendant GARCIA") was the associate warden at FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021 – a time that overlapped with Plaintiff being abused by Defendant BELLHOUSE.  As the warden, Defendant GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin. Defendant GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.  In his capacity as an agent, servant, and employee of Defendant United States, and within the course and scope of his employment as such,

Defendant GARCIA was responsible for the day-to-day oversight, supervision, care, custody, control, direction, safety, and well-being of people confined at FCI Dublin, including Plaintiff. Defendant Garcia is sued in his individual capacity.

16.     Defendant JOHN BELLHOUSE ("Defendant BELLHOUSE") was an Officer at FCI Dublin during the time period relevant to the events described herein. While performing the acts and omissions that Plaintiffs allege in this complaint, Defendant BELLHOUSE was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

17.     Officer NICHOLAS T. RAMOS ("Officer RAMOS") was an Officer at FCI Dublin during the time period relevant to the events described herein.[2]

18.     While acting and failing to act as alleged herein, Defendants had complete custody and total control of Plaintiff, who was dependent upon Defendants for personal security and necessities.

19.     In performing the acts and/or omissions contained herein, Defendants acted under color of federal law, and each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff.  Each of them knew or should have known that their conduct, attitudes, actions, and omissions were a threat to Plaintiff and to their constitutionally and statutorily protected rights.  Despite this knowledge, Defendants failed to take steps to protect Plaintiff and to ensure that their rights were adequately protected while in the custody of Defendants.

20.     At all times relevant hereto, each Defendant was the agent, representative, or employee of each other Defendant.  At all times relevant hereto, each Defendant was acting within the course and scope of said alternative agency, representation, or employment and was within the scope of their authority, whether actual or apparent.  At all times relevant hereto, each Defendant was the authorized agent, partner, servant, or contractor of each other Defendant, and the acts and omissions herein alleged were done by them acting through such capacity, within the scope of

---

[2] In August 2022, former Dublin Officer Nicholas T. Ramos died by suicide while on administrative leave and under investigation for sexually abusing incarcerated women.

their authority, with the permission, ratification, approval, and consent of each other Defendant. Accordingly, each of them is jointly and severally liable to Plaintiff.

21.     Individual Defendants further directly assaulted, harassed, demeaned, degraded, and trafficked particular Plaintiffs as alleged herein.

### CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS

22.     Plaintiff brings claims under the Federal Tort Claims Act, asserted against the United States of America.

23.     Plaintiff exhausted these claims against the United States in accordance with the requirements of the FTCA.

24.     Plaintiff submitted a "Claim for Damage, Injury, or Death" to the BOP as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.  The BOP received her administrative claim on March 7, 2023.  By September 7, 2023, six months after BOP received Plaintiff's administrative claim, the BOP has neither accepted nor rejected the claims.  Pursuant to 28 U.S.C. § 2675(a), Plaintiff considers this failure to act as a final denial of the claims.

### JURY DEMAND

25.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues and claims in this action that are so triable.

### FACTUAL ALLEGATIONS

**I.      Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond to Reports of Staff Sexual Misconduct**

26.     Prison staff sexual abuse of incarcerated people constitutes a form of torture that violates the Eighth Amendment.  *See Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). Such abusive sexual contact also violates federal criminal law.  *See, e.g.*, 18 U.S.C. §§ 2243, 2244.

27.     The Prison Rape Elimination Act ("PREA") of 2003 required the Attorney General to promulgate rules to prevent sexual abuse in prison facilities.  *See* 34 U.S.C. § 30307.  In 2012, the U.S. Department of Justice issued regulations designed to "prevent, detect, and respond to prison rape."  *See* 28 C.F.R. § 115, 77 Fed. Reg. No. 119 (June 20, 2012).  These regulations were immediately binding on BOP facilities.  *Id.*

COMPLAINT

28. Under PREA regulations, BOP is required to "train all employees who may have contact with inmates" on the following: its "zero-tolerance policy for sexual abuse and sexual harassment"; prevention, reporting, detection, and response to such behavior; "the right of inmates to . . . be free from retaliation for reporting sexual abuse and sexual harassment"; signs and dynamics of sexual abuse in confinement, and "common reactions of … victims"; and "how to avoid inappropriate relationships with inmates." *Id.* § 115.31(a). The training must be "tailored to the gender of the inmates at the employee's facility," and the agency must conduct a refresher training on PREA standards every two years. *Id.* § 115.31(b)–(c). In off years from the training, "the agency shall provide refresher information on current sexual abuse and sexual harassment policies." *Id.* § 115.31(c).

29. PREA regulations mandate staff reporting. BOP must "require all staff to report immediately . . . any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." 28 C.F.R. § 115.61(a).

30. Per PREA regulations, administrative investigations of alleged sexual abuse by a staff member or incarcerated person are required to proceed "promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports." *Id.* § 115.71(a). Investigators must be specially trained in sexual abuse investigations and must "gather and preserve direct and circumstantial evidence," including interviewing "alleged victims, suspected perpetrators, and witnesses" and "shall review prior complaints and reports of sexual abuse involving the suspected perpetrator." *Id.* § 115.71(c)-(b). The agency is prohibited from determining an alleged victim's credibility based on their "status as inmate or staff." *Id.* § 115.71(e). Investigations are further required to "include an effort to determine whether staff actions or failures to act contributed to the abuse." *Id.* § 115.71(f). "The departure of the alleged abuser or victim from the employment or control of the facility or agency shall not provide a basis for terminating an investigation." *Id.* § 115.71(j).

31. Substantiated allegations of potentially criminal conduct must be referred for

COMPLAINT

1  prosecution and the agency must retain written reports of investigations for five years beyond the

2  end of the staff member's employment. *Id.* § 115.71(h)–(i).  After investigating an incarcerated

3  person's allegation that they were abused, BOP must inform that person of whether their

4  allegation was found to be substantiated, unsubstantiated, or unfounded, even if the investigation

5  was completed by another agency. *Id.* § 115.73(a)–(b).  The presumptive disciplinary sanction for

6  substantiated allegations of sexual abuse is termination. *Id.* § 115.76(b).

7        32.    PREA also includes measures designed to prevent staff retaliation following

8  incarcerated persons' reports of abuse.  PREA requires that BOP establish a policy to prevent

9  retaliation, and that staff monitor retaliation, provide "emotional support services for inmates . . .

10  who fear retaliation," and monitor for at least 90 days the conduct and treatment of incarcerated

11  people who report abuse. *Id.* § 115.67.  These protective measures include strict limits on the use

12  of administrative segregation.  The regulations provide: "Inmates at high risk for sexual

13  victimization shall not be placed in involuntary segregated housing unless an assessment of all

14  available alternatives has been made, and . . . there is no available alternative means of separation

15  from likely abusers.  If a facility cannot conduct such an assessment immediately, the facility

16  may" hold the individual in segregated housing for "less than 24 hours while conducting the

17  assessment." *Id.* § 115.43(a).   Any incarcerated person placed in protective custody for this

18  purpose "shall have access to programs, privileges, education, and work opportunities to the extent

19  possible." *Id.* § 115.43(b).

20  **II.     FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish.**

21        33.    Eight former officers—including former Warden Ray Garcia and a former

22  chaplain—have been charged with sexual misconduct for incidents spanning from 2019 into 2021,

23  with more charges likely forthcoming. *See United States v. Garcia*, No. 4:21-cr-00429-YGR

24  (N.D. Cal.) (sentenced to 70 months in prison and 15 years of supervised released following jury

25  trial); *United States v. Highhouse*, No. 4:22-cr-00016-HGS (N.D. Cal.) (sentenced to 84 months in

26  federal prison and 5 months of supervised release following guilty plea); *United States v. Chavez*,

27  No. 4:22-cr-00104-YGR-1 (N.D. Cal.) (sentenced to 20 months in federal prison and 10 years of

28  supervised release following guilty plea); *United States v. Klinger*, No. 4:22-cr-00031-YGR (N.D.

COMPLAINT

Cal.) (plead guilty to three counts of sexual abuse of a ward); *United States v. Bellhouse*, No. 4:22-cr-00066-YGR (N.D. Cal.) (sentenced to 63 months in federal prison and 5 years of supervised release following jury trial); *United States v. Smith*, No. 4:23-cr-00110-YGR-1 (charges pending); *United States v. Nunley*, No. 4:23-cr-00213-HSG (N.D. Cal.) (awaiting sentencing following guilty plea for 4 counts of sexual abuse of a ward, 5 counts of abusive sexual contact, and 1 count of false statements to a government agency); *United States v. Jones*, No. 4:23-cr-00212-HSG (N.D. Cal.) (sentenced to 96 months in federal prison and 10 years of supervised release following guilty plea for 6 counts of sexual abuse of a ward and 1 count of false statements to a government agency).

34.     Defendant GARCIA was the associate warden at FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021 – a time that overlapped with Plaintiff being abused by Defendant BELLHOUSE.  As the warden, Defendant GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin.  Defendant GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

35.     Defendant GARCIA was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact, and one count of lying to the FBI. Defendant GARCIA was sentenced to 5 years and 10 months in prison.

36.     In early 2022, Defendant BELLHOUSE was charged with sexually abusing women in his custody.  Defendant BELLHOUSE was convicted of sexually abusing two incarcerated women on multiple occasions following a jury trial and was sentenced to 63 months in federal prison and 5 years of supervised release.

37.     Defendant GARCIA led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA.  Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was in fact a serial rapist of incarcerated people, and he was clearly tolerating and allowing abuse by many more of his underlings, including Defendant BELLHOUSE.

COMPLAINT

38.     Defendant GARCIA had actual knowledge that the other correctional officers under his supervision were sexually assaulting inmates before and after Plaintiff was abused.  Despite this knowledge, Defendant GARCIA did not do anything to stop it, even though he had a duty to do so.  Due to the fact that Defendant GARCIA had knowledge of prior sexual abuse at FCI and failing to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

39.     Defendant GARCIA had actual knowledge that inmates complained about the assaults.  Defendant GARCIA knew or should have known that the inmates were subjected to retaliation.  Because Defendant did not investigate complaints of abuse and harassment and did not do anything to stop it, inmates, including Plaintiff, were abused.  Had Defendant GARCIA taken reasonable actions, which he was under a legal duty to perform, Plaintiff would not have been abused.  Defendant Garcia's intentional indifference to inmate abuse was a substantial factor in Plaintiff suffering abuse.

40.     PREA guidelines and FCI Dublin policies and procedures required all inmate complaints of sexual assault and sexual abuse filed or reported internally be reported to Defendant GARCIA.  During GARCIA's tenure, complaints of sexual assaults of inmates by correctional officers and/or staff were reported.

41.     With knowledge of prior abuse against inmates by FCI Dublin, representatives, and employees, Defendant GARCIA failed to protect the inmates and turned a blind eye.  Such behavior set the tone for rape culture at FCI Dublin, garnering Garcia and his subordinate correctional officers and employees the nickname – "the Rape Club."

42.     Further, Defendant GARCIA and others inadequately supervised and trained the prison's correctional officers and other employees, including Defendant BELLHOUSE.  The UNITED STATES failed to supervise which was a substantial factor in causing Plaintiff's abuse.

43.     Defendants repeatedly violated the law.  From inadequate training, to lack of confidential reporting mechanisms and access to outside support services, to failures in administrative investigations, widespread misuse of administrative segregation, and rampant staff retaliation, its actions—and failures to act—created an environment that exposed Plaintiff to an

COMPLAINT

unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked at the trial of Defendant GARCIA, PREA "really doesn't exist in Dublin."  Transcript at 401, *United States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

### III.    Defendant BELLHOUSE Subjected Plaintiff To Sexual Abuse

44.    Plaintiff was incarcerated at FCI Dublin beginning on or around September 2012.

45.    Defendant BELLHOUSE subjected Plaintiff to extensive sexual harassment and abuse while Plaintiff was incarcerated, including using his power and authority as a correctional officer to coerce Plaintiff into having sex with him.

46.    Defendant BELLHOUSE began making advances toward Plaintiff in early 2020 when Plaintiff began working with Defendant BELLHOUSE doing tasks related to pest control and distributing cleaning and chemicals to the facility.  At the time, Defendant BELLHOUSE was the supervising manager in charge of the safety office, recycling office, and pest control. Defendant BELLHOUSE started by flirting with Plaintiff, calling her beautiful and his girlfriend, and giving her small gifts, including food from the outside like cheese, popcorn, creamer, and strawberries.  Plaintiff felt deeply isolated at this time after being incarcerated for so long and vulnerable.  Defendant BELLHOUSE's behavior then escalated to hugs and kisses.

47.    Defendant BELLHOUSE manipulated Plaintiff into believing he could help her to make a life in the United States.  He made comments about making plans to be together in the future, including that they would be together when Plaintiff was released or that Plaintiff could find a way to come back to this country to be with him.

48.    Defendant BELLHOUSE continued to escalate his behavior and use his position as a prison officer to have a sexual relationship with Plaintiff.  Beginning in May or June 2020, Plaintiff began performing oral sex on Defendant BELLHOUSE.  This continued over at least three (3) occasions until October 2020.

49.    Defendant BELLHOUSE also digitally penetrated her on approximately four (4) to five (5) occasions between May and October 2020.

50.    These encounters occurred most often in the supply office inside an internal office that belonged to another Safety Officer, Officer Melo, in the facility.  No cameras were present in

COMPLAINT

the supply office and, on information and belief, Defendant BELLHOUSE used that office because there were no cameras around.  Other encounters occurred in a corner of the hallway in the safety office where there was little visibility.

51.     To Plaintiff's knowledge, on one occasion, Defendant BELLHOUSE used another incarcerated person to act as a "look out" while they had sex to give warning if anyone else was around.  After Defendant BELLHOUSE had sex with Plaintiff, he began giving her larger gifts, including acrylic paint and brushes for her art hobbies, a necklace, and a pair of earrings.

52.     Plaintiff is aware that Officer Klinger, another officer in the facility, likely knew that Defendant BELLHOUSE was engaging in sexual acts with her.  Plaintiff  knew that Officer Klinger was having sex with another incarcerated woman she knew, and that Officer Klinger and Defendant BELLHOUSE spoke about their sexual relationships together.

53.     These sexual encounters resulted from manipulation and coercion and resulted in deep feelings of shame for Plaintiff.  Plaintiff felt worthless as a woman for performing sex acts with Defendant BELLHOUSE but did so because of her particular vulnerability, his position of authority, and the attention he gave her through gifts and promises of assistance.

54.     Defendant BELLHOUSE spoke about other women he was interested in during the time he was also having sex with Plaintiff.  He was particularly obsessed with a woman who worked in the camp, and he allowed her to have more freedom and could go outside or drive for work because he liked her.  Plaintiff's sexual relationship ended after about a year of coercive sexual relations with Defendant BELLHOUSE at the end of 2020.

**IV.    After Defendant BELLHOUSE Was Investigated for Sexual Abuse, Plaintiff Was Retaliated Against by Officer RAMOS**

55.     In March 2020, Defendant BELLHOUSE was investigated for having sexual relationships with other women.  Plaintiff was interviewed by the Special Investigative Specialist (SIS), Lieutenant Putnam, in June 2020.  Plaintiff was afraid of what would happen if she reported the abuse because she knew that officers in the facility work together.

56.     The mere fact of talking to SIS was enough to engender retaliation.  Officer RAMOS began verbally assaulting Plaintiff after he found out she spoke to the SIS.  He often

COMPLAINT

1   called her "embarrassing" or said Plaintiff was "burned" because she spoke to SIS.  He also

2   became stricter with Plaintiff and conducted multiple random searches of her cell which included

3   punitively disposing of her personal possessions.

4          57.      In March 2021, Plaintiff spoke to an FBI agent about Defendant BELLHOUSE's

5   abuse.  She was too fearful to report details about her abuse because of the culture of retaliation.

6   After she spoke to the FBI, even though she did not give details about BELLHOUSE's abuse,

7   Officer RAMOS's retaliation got even worse.  Immediately after the FBI investigation, Plaintiff

8   was put in the Special Housing Unit (SHU) for a week.  When she was released from the SHU,

9   Officer RAMOS was the person to escort her back to her cell.  As they were walking, another

10   woman asked if she was going to return to the safety office to work.  When Plaintiff said no,

11   Officer RAMOS responded, "How could you not return? Everything went to shit because of you!"

12          58.      While Plaintiff was in the SHU, Officer RAMOS also raided her cell and threw

13   away possessions with deep emotional ties, such as all of the photos that her family sent her over

14   the years.  This was particularly painful for her because she was incarcerated for nearly ten years

15   and it felt like losing memories of her family she could not get back.

16          59.      Officer RAMOS continued harassing Plaintiff after she returned from the SHU.  He

17   called her "Mrs. Bellhouse" and when her family could not make it to a family visit, he said "What

18   happened? [Defendant BELLHOUSE] couldn't visit you today?"  Officer RAMOS said these

19   things around other incarcerated women and officers in order to humiliate and degrade Plaintiff.

20   He also singled her out by preventing her from wearing non-uniform clothes on days where

21   uniforms were not necessary, just to be cruel and hurtful.

22          60.      Defendant BELLHOUSE was put on leave in March 2021.  After this, Plaintiff

23   finally felt able to fully report the abuse.  In June or July of 2021, Plaintiff provided a sworn

24   statement to the SIS, Lieutenant Putnam, about Defendant BELLHOUSE's abuse.  Since

25   reporting, Plaintiff has been cooperating with all investigations against Defendant BELLHOUSE.

26   Defendant BELLHOUSE was charged sexual abuse of three incarcerated women in 2022, which

27   all occurred in the Safety Office where Plaintiff worked.

28          61.      Plaintiff's experience with Defendant BELLHOUSE was painful and caused

COMPLAINT

psychological and physical manifestations of extreme emotional distress.  She now can't sleep, has nightmares, and has anxiety.  She feels guilty that she engaged in sexual acts with Defendant BELLHOUSE and feels like a sexual object, not a person.  Defendant BELLHOUSE's abuse brought back many of the feelings she felt when she was sexually abused in her childhood and in her abusive relationships.  She feels like her life doesn't matter sand sometimes she still cries over what she went though.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*Plaintiff Against Defendant BELLHOUSE*
**(Eighth Amendment, Cruel and Unusual Punishment)**

62.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

63.     Defendant BELLHOUSE subjected Plaintiff to serious bodily harm as defined by the Eight Amendment when he used his position of power as an Officer to sexually assault and harass Plaintiff .

64.     Defendant's actions and failures described here caused the Plaintiff's physical, emotional, and constitutional harms, and she has a claim for damages for such violations under ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.

65.     This claim for damages is cognizable under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) because it claims the same harm and injury as recognized in *Carlson v. Green* 446 U.S. 14 (1980) and *Farmer v. Brennan* 511 U.S. 825 (1994), two recognized *Bivens* contexts.

### SECOND CLAIM FOR RELIEF
*Plaintiff Against Defendant GARCIA*
**(Eighth Amendment, Cruel and Unusual Punishment)**

66.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

67.     Defendant GARCIA was deliberately indifferent to the substantial likelihood of

COMPLAINT

1    serious harm to Plaintiff.  Despite knowledge, Defendant GARCIA did nothing to prevent the

2    alleged sexual misconduct and, after Plaintiff was interviewed about Defendant BELLHOUSE's

3    conduct, she was retaliated against, including by Officer RAMOS.

4         68.    Defendant's actions and failures described here caused the Plaintiff's physical,

5    emotional, and constitutional harms, and she has a claim for damages for such violations under

6    ongoing deprivation of rights secured by the United States Constitution under the Eighth

7    Amendment.

8         69.    This claim for damages is cognizable under *Bivens v. Six Unknown Named Agents*,

9    403 U.S. 388 (1971) because it claims the same harm and injury as recognized in *Carlson v.*

10   *Green* 446 U.S. 14 (1980) and *Farmer v. Brennan* 511 U.S. 825 (1994), two recognized *Bivens*

11   contexts.

**CLAIMS FOR RELIEF UNDER THE FTCA**

**THIRD CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Sexual Assault; Sexual Battery – Cal. Civ. Code § 1708.5)**

15   70.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs

16   as if fully set forth herein.

17   71.    Plaintiff brings this claim against the United States under the FTCA based on acts

18   and/or omissions of Defendant United States and all other Defendants, while working in their

19   official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

20   acting within the scope of their employment as federal employees in their official uniforms during

21   work hours.

22   72.    A person commits a sexual battery when he acts with the intent to cause a harmful

23   or offensive contact with another by use of the person's intimate part, and a sexually offensive

24   contact with that person directly or indirectly results.  Cal. Civ. Code § 1708.5(a)(2).

25   73.    Defendants subjected Plaintiff to sexual acts, with the intent to cause harmful or

26   offensive contact.  Such contact with Plaintiff was deeply offensive to their personal dignity and

27   would offend a person of ordinary sensitivity.

28   74.    As a direct and proximate result of the foregoing, Plaintiff suffered psychological

14

trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

75.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### FOURTH CLAIM FOR RELIEF
### *Plaintiff Against the United States*
### (Intentional Infliction of Emotional Distress ("IIED") – California common law)

76.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

77.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

78.     A person is liable for IIED when the defendant engages in outrageous conduct, when the defendant intended to cause plaintiff to suffer emotional distress or engaged in the conduct with reckless disregard to the probability of causing plaintiff to suffer emotional distress, the plaintiff suffered emotional distress, and the outrageous conduct was a cause of the severe emotional distress.

79.     Defendant United States, individually or through its agents, servants, contractors, and/or employees, engaged in extreme and outrageous conduct by subjecting Plaintiff to sexual acts while incarcerated in their custody, through the above-described acts and omissions.

80.     Plaintiff's injuries and damages were caused by intentional torts perpetrated by Defendants.  Under 28 U.S.C. § 2680(h), Defendant United States is liable for intentional torts perpetrated by its agents, including correctional officers, that occurred within the scope of their employment under color of federal law.

81.     At all relevant times, Defendants were acting under color of law by supervising, disciplining, overseeing, monitoring, controlling, directing, restraining, and imprisoning Plaintiff within the scope of their employment for the United States.

COMPLAINT

82.     Defendants used their authority as law enforcement officers to sexually assault and harass Plaintiff, and as a direct and proximate cause of this conduct Plaintiff has suffered psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

83.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### FIFTH CLAIM FOR RELIEF
#### *Plaintiff Against the United States*
### (Sexual Harassment - Cal. Civ. Code § 51.9)

84.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

85.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

86.     A person is liable for sexual harassment when a special relationship exists between a plaintiff and person where there is a considerable imbalance of power; the defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or hostile nature based on gender, that were unwelcome and pervasive or severe; and the plaintiff has suffered or will suffer economic loss or personal injury including emotional distress or violation of a statutory or constitutional right.

87.     There exists in FCI Dublin, as all prisons, an extreme imbalance of power between the officers and the incarcerated individuals.  Officers control every aspect of incarcerated persons lives.  In addition to this always-present imbalance of power, the problem is compounded by retaliation against those who report misconduct.

88.     For purposes of Cal. Civ. Code § 51.9, a special relationship exists/existed between Defendants and Plaintiff due to the coercive power of the officers' positions.

16

COMPLAINT

89.     Defendants in this special relationship with Plaintiff violated Cal. Civ. Code § 51.9 by repeatedly sexually abusing her.

90.     Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

91.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### SIXTH CLAIM FOR RELIEF
### *Plaintiff Against the United States*
### (Tom Bane Civil Rights Act– Cal. Civ. Code § 52.1)

92.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

93.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

94.     A person interferes with another's civil rights if the person uses or attempts to use threats, intimidation, or coercion to interfere with the exercise or enjoyment of rights secured by the Constitution or state or federal laws.

95.     Speech alone is sufficient where the threatened person reasonably fears violence because the person threatening had the apparent ability to carry out the threat.  Because of the coercive, and sometimes violent, nature of a prison and the fact that survivors had seen retaliation before, Plaintiff reasonably feared violence by Defendants.

96.     Defendant United States through its agents, servants, contractors, and/or employees violate Plaintiff's rights, including but not limited to, their right of protection from bodily harm and sexual violation, imposition of punishment without due process, and cruel and unusual punishment.  Defendants violated these rights by threats, intimidation, or coercion.

97.     As a direct and proximate result of the foregoing, Plaintiff has suffered emotional

COMPLAINT

distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

98.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**SEVENTH CLAIM FOR RELIEF**
***Plaintiff Against the United States***
**(Gender Violence – Cal. Civ. Code § 52.4)**

99.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

100.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

101.     Gender violence is a form of sex discrimination and includes a physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

102.     The conditions at FCI Dublin are that of coercive conditions, as evident by officers regularly withholding things like out of cell time or personal property in exchange for sexual favors.  Further, officers exchanged sexual favors for perks that are not normally available to inmates such as treats, alcohol, and the ability to roam the halls.

103.     Defendants discriminated against Plaintiff based on her sex and/or gender when they repeatedly sexually abused her, physically intruding and invading upon her body under coercive conditions.

104.     As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

105.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

COMPLAINT

**EIGHTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Invasion of Privacy – California common law)**

106.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

107.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

108.    The elements of invasion of privacy are (1) whether the defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of the plaintiff; (2) the intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and (3) the intrusion caused plaintiff to sustain injury, damage, loss, or harm.

109.    Defendants intentionally and substantially intruded, both physically and otherwise, upon Plaintiff's seclusion when they repeatedly sexually abused her.

110.    Such intrusions were substantial and highly offensive to an ordinarily reasonable person due to their sexual and degrading nature.

111.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

112.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**NINTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Negligence – California common law)**

113.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

19

114.   Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

115.   At all relevant times, Defendant United States hired various correctional and/or administrative personnel at FCI Dublin, including but not limited to wardens, associate wardens, captains, lieutenants, unit managers, counselors, correctional officers, and investigators.

116.   At all relevant times, FCI Dublin personnel, including individual Defendants, held themselves out to Plaintiff as correctional and/or administrative personnel with the knowledge, capacity, and ability to provide due care in accordance with standards of reasonable care common and acceptable in the community.

117.   **Duty.** United States and all other Defendants had a custodial duty, as well as a mandatory statutory obligation under PREA and BOP policy, to protect Plaintiff, who was incarcerated by the United States, from foreseeable harm, including sexual abuse.  This duty was non-delegable.

118.   BOP policy forbids staff in engaging with sexual activity with inmates and staff may not allow other people to engage in sexual activity.  BOP policy makes clear that all sexual activity with inmates, even non-physical, is against policy.  BOP states that there is no such thing as consensual sex between staff and inmates.

119.   United States and all other Defendants also had a general duty of care to Plaintiff to act as a reasonable prudent person would under similar circumstances.

120.   It was the Defendants' duty to maintain, operate, and control FCI Dublin as a safe and secure space for incarcerated people.

121.   It was the Defendants' duty to protect incarcerated people from foreseeable harm inflicted by BOP personnel.

122.   **Breach of Duty.** The United States, individually or through its agents, servants, contractors, and/or employees acting within the scope of their employment, breached those duties

by failing to supervise and operate FCI Dublin in a manner that would have prevented ongoing sexual abuse and retaliation against Plaintiff.

123.    A reasonable administrator would have complied with PREA regulations, including safeguarding against retaliation for those who report misconduct.

124.    A reasonable administrator would also not have exposed Plaintiff to the danger of ongoing sexual abuse.

125.    Agents, servants, contractors, and/or employees of Defendant United States knew or should have known about the ongoing sexual abuse against Plaintiff, and in breaching their duty directly exposed Plaintiff to an unreasonable risk of bodily injury and sexual assault.

126.    Despite notice, Defendant United States, through its employees, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff in violation of federal regulations and BOP policy.

127.    The United States, through its employees also failed to train, retain, and supervise officers as well as monitor and investigate them.

128.    When the employer is aware of its employees' tortious conduct, as it was here, and it ignores or assists in it, retention of employees does not represent legitimate policy considerations warranting discretion.

129.    At all relevant times, each of the Defendants stood in such a relationship with the other Defendants as to make each of the Defendants liable for the acts and omissions of all other Defendants in regard to their treatment of Plaintiff.

130.    **Causation.** The United States' negligence in administering FCI Dublin is a direct and proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

131.    Officers' employment at FCI Dublin was essential to their commission of tortious misconduct, which would not have happened absent their employment and privileges.

132.    Defendant officers' conduct was grossly negligent as they showed complete disregard for rights and safety of Plaintiff.

133.    It was foreseeable to FCI Dublin personnel that Plaintiff was at risk of imminent

1  serious harm including sexual abuse.

2      134.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

3  States for the wrongful acts/omissions of its employees.

4                          **TENTH CLAIM FOR RELIEF**
                          *Plaintiff Against the United States*
5  **(Negligent Infliction of Emotional Distress ("NIED") – California common law)**

6      135.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs

7  as if fully set forth herein.

8      136.    Plaintiff brings this claim against the United States under the FTCA based on acts

9  and/or omissions of Defendant United States and all other Defendants while working in their

10 official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

11 acting within the scope of their employment as federal employees in their official uniforms during

12 work hours.

13     137.    The elements of an NIED claim are as follows: (1) the defendant engaged in

14 negligent conduct/a willful violation of a statutory standard; (2) the plaintiff suffered serious

15 emotional distress; and (3) the defendant's negligent conduct/willful violation of statutory

16 standard was a cause of the serious emotional distress.

17     138.    Defendant officers and the United States engaged in negligent conduct and willful

18 violations of statutory standards by repeatedly sexually abusing Plaintiff, constituting both

19 extreme and outrageous behavior and the negligence.

20     139.    The United States' negligence in administering FCI Dublin is a direct and

21 proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety,

22 depression, loss of quality of life and dignity, as well as medical and economic injuries.

23     140.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

24 States for the wrongful acts/omissions of its employees.

25                  **CLAIMS FOR RELIEF UNDER THE TVPA**

26     141.    Plaintiff incorporates by this reference the allegations contained in the preceding

27 paragraphs as if set forth fully herein.

28     142.    The exploitation of vulnerable people is so common that Congress has passed the

COMPLAINT

Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1581 *et seq.*, a comprehensive statutory framework imposing both criminal and civil liability, *see* 18 U.S.C. § 1595, of persons engaging or attempting to engage or benefit from sexual exploitation and labor trafficking or obstructing anti-trafficking enforcement.

143.    Specifically, the TVPA punishes anyone who attempts to, conspires to, or actively "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or  . . . benefits, financially or by receiving anything of value, from participation in a [trafficking] venture" while knowing "that means of force, threats of force, fraud, coercion . . . will be used to cause the person to engage in a commercial sex act."  18 U.S.C. § 1591(a); 18 U.S.C. § 1594.

144.    "Coercion" means "threats of serious harm to or physical restraint against any person . . . any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person" or "the abuse or threatened abuse of law or the legal process."  18 U.S.C. § 1591(e)(2).

145.    "Serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm."  18 U.S.C. § 1591(e)(5).

146.    The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.  18 U.S.C. § 1591(e)(1).

147.    Commercial sex act "means any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C § 1591(e)(3).

148.    Additionally, the TVPA punishes anyone who "knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means.

(1) by means of force, threats of force, physical restraint, or threats of physical

COMPLAINT

restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

18 U.S.C. § 1589 (a).

149.    The TVPA punishes anyone who knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).  18 U.S.C. § 1589 (b).

150.    The term "abuse or threatened abuse of law or legal process" in the forced labor provision means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."  18 U.S.C. § 1589 (c)(1).

151.    The term "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589 (c)(12).

152.    The TVPA also punishes anyone who "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section," 18 U.S.C. § 1591(d).

153.    The TVPA allows "[an] individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture

which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."  18 U.S.C. § 1595(a).

154.    Congress grants a plaintiff up to ten years in which to bring a civil action under 18 U.S.C. § 1595(c).

**ELEVENTH<mark>FIRST</mark> CLAIM FOR RELIEF**
*Plaintiff Against Defendant BELLHOUSE*
**(Sex Trafficking)**

155.    Defendant BELLHOUSE engaged or attempted to engage in sex trafficking of Plaintiff as prohibited under 18 U.S.C. § 1591, 1595(a).

156.    Defendant BELLHOUSE forced Plaintiff to engage in commercial sex acts within the meaning 18 U.S.C. § 1591.  These sex acts included oral sex and digital penetration.

157.    Defendant BELLHOUSE knowingly recruited, enticed, and solicited Plaintiff by flirting with, manipulating, harassing, coercing, and pressuring Plaintiff for sex acts.

158.    Defendant BELLHOUSE made Plaintiff commit these sexual acts through force, fraud, or coercion within the meaning of 18 U.S.C. § 1591.  For example by:

- assaulting Plaintiff in places where she could not easily escape;
- using his power and status as a correctional officer who has the power to control and direct incarcerated persons and their movements to have commercial sex acts with him;
- manipulating Plaintiff with gifts of items of value such, for example food, art supplies, and jewelry after assaulting her.

159.    These methods of force, fraud, and coercion were a plan designed to make Plaintiff believe that she would suffer serious harm should she not obey his sexual advances.

160.    These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint.

161.    Defendant BELLHOUSE exchanged valuable goods and special benefits for these sex acts.  In this way, Defendant BELLHOUSE's conduct constitutes an attempt to engage in sex in exchange for things of value, the definition of commerciality under 18 U.S.C. § 1591.

COMPLAINT

162.    These acts constitute civil wrongs inflicted on Plaintiff and actionable under 18 U.S.C. § 1595.

163.    Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm and she has a claim for damages for such violations under 18 U.S.C. §§ 1591, 1595.

164.    Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendants.

165.    Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct.

**TWELFTH CLAIM FOR RELIEF**
*Plaintiffs Against All Individual Capacity Defendants*
**(Conspiracy to Violate the Trafficking Victims and Protection Act, 18 U.S.C. § 1584)**

166.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

167.    The Trafficking Victims Protection Act establishes that "[w]hoever conspires with another to violate section 1581, 1583, 1589, 1590, or 1592 shall be punished in the same manner as a completed violation of such section; . . . [and w]hoever conspires with another to violate section 1591 shall be fined under this title, imprisoned for any term of years or for life, or both." 18 U.S.C. § 1594 (b), (c).

168.    The TVPA allows "[an] individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a).

169.    Congress grants a plaintiff up to ten years in which to bring a civil action under 18 U.S.C. § 1595(c).

170.    At all relevant times, Defendants knowingly agreed, contrived, confederated, acted in concert, aided and abetted, and/or conspired to continue their longstanding practice of

COMPLAINT

exchanging sex for valuable goods or special benefits as defined in 18 U.S.C. § 1591, or obtaining

forced labor as defined in 18 U.S.C. § 1589 by coercing incarcerated people to perform sexual acts

or to act as lookouts as the Defendants engaged in sexual acts.

171.    All Defendants conspired to recruit, entice, harbor, transport, provide, obtain,

maintain, patronize, solicit, or benefit from participation in the sex and/or labor trafficking of

Plaintiffs as defined by 18 U.S.C. § 1581 *et seq.*

172.    Defendants committed overt acts in furtherance of the agreement or understanding

by committing one or more of the following acts:

- Forcing or coercing other incarcerated people to act as lookouts while Defendant BELLHOUSE engaged or attempted to engage in sexual acts in exchange for valuable goods or benefits;

- Directing incarcerated people into locations where principal perpetrating officers could engage or attempt in engage in sexual acts;

- Engaging in a range of retaliatory tactics to threaten and silence survivors or witnesses of sexual abuse or trafficking including but not limited to verbal abuse, indiscriminate searches, taunting, and humiliation;

- Knowingly refusing to report abuse or trafficking occurring at FCI Dublin and/or obstructing investigation into abuse or trafficking;

- Ensuring confidential means of reporting abuse is not possible by indiscriminately opening legal mail, monitoring confidential or private communications, interfering with confidential or private communications, and intentionally preventing access to reporting mechanisms such as grievances and other reporting lines;

- Maintaining practices, policies, and procedures that allowed Defendants to benefit from unlawful commercial sex ventures and human trafficking.

173.    Defendants' participation and assistance in the furtherance of an illegal sex trafficking

plan and/or purpose was intentional and/or willful and, therefore, Defendants intentionally and/or

willfully caused the facilitation of the sex acts in support of their trafficking venture.

174.    Defendants knew or should have known that their acts supported and facilitated a

trafficking venture.

175.    Defendants' conspiracy kept Plaintiff and other witnesses of the trafficking from

taking meaningful action, resulting in significant injuries to Plaintiff.

176.    Defendants' conduct caused Plaintiff serious harm including, without limitation,

COMPLAINT

physical, psychological, emotional, financial, and reputational harm, and Plaintiffs have claims for damages for such violations under 18 U.S.C. § 1584; 18 U.S.C. § 1589, 18 U.S.C. § 1591; 18 U.S.C. § 1595.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants, and each of them, as follows:

177.    An award of compensatory, punitive, and nominal damages to Plaintiff in an amount to be determined at trial;

178.    An award to Plaintiff, pursuant to 42 U.S.C. §§ 1988 and 12205 of the costs of this suit and reasonable attorneys' fees and litigation expenses; and

179.    For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DATED:  March 7, 2024          ARNOLD & PORTER KAYE SCHOLER LLP

By:   */s/ Carson D. Anderson*
      Stephen Cha-Kim
      Carson D. Anderson
      Natalie Steiert

DATED:  March 7, 2024          RIGHTS BEHIND BARS

By:   */s/ Oren Nimni*
      Ms. Amaris Montes (she/her)
      Mr. Oren Nimni (he/him)

Attorneys for Plaintiff

COMPLAINT